WO

JDN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Jose Alba,

Plaintiff,

vs.

Arizona, State of, et al.,

Defendants.

No. CV-23-01419-PHX-MTL (ASB)

**ORDER**

On July 31, 2025, the Court granted Motions for Summary Judgment filed by the State of Arizona ("the State"), the City of Scottsdale ("the City"), Scottsdale Officer Sean Ryan, and former and current Maricopa County Sheriffs Paul Penzone and Jerry Sheridan ("the Sheriffs"). (Doc. 94.) In its Summary Judgment Order, the Court issued an order pursuant to Federal Rule of Civil Procedure 56(f)(1) for Plaintiff Jose Alba to show cause why the remaining claims against Maricopa County ("the County") should not also be dismissed because they rely on the same material facts as the claims against the State and the Sheriffs. (*Id.* at 20.) Before the Court is Plaintiff's Response to the Order to Show Cause. (Doc. 95.) The Court will dismiss the claims against the County and terminate the action.

## I.     Background

Plaintiff brought this pro se civil rights case under 42 U.S.C. § 1983 and state law

against the State, the City, Officer Ryan, the County, and the Sheriffs. (Doc. 26.)[1] Plaintiff initiated this action in Maricopa County Superior Court, and the State removed the action to federal court. (Doc. 1, No. CV2-23-093027.)

Plaintiff's claims arose in 2022, after Plaintiff was acquitted on two criminal charges but found guilty on a third, and he was sentenced to 2 years and 4 months imprisonment. (Doc. 26 ¶ 16.) At his sentencing on November 3, 2022, Plaintiff was given credit for pretrial detention that totaled 2 years and 8 months, and he was told that upon his return to the Maricopa County Jail after the hearing, he would be immediately released. (*Id.* ¶¶ 17–18.) Plaintiff continued to be held in jail and was not released until February 6, 2023. (*Id.* ¶ 25; Doc. 66 ¶ 21: Doc. 82 ¶ 21.)

As relevant here, Plaintiff asserted a state law claim of prolongation of imprisonment and false imprisonment against the State, the County, and Sheriff Penzone (Count One). (Doc. 26 ¶¶ 5–31.) Plaintiff also asserted claims under § 1983 and state law against the County and Sheriff Penzone (Count Two). (*Id.* ¶¶ 32–38.) The Court construed Plaintiff's § 1983 claim in Count Two as a Fourteenth Amendment Due Process claim. (Doc. 94 at 10.) *See Gant v. City of Los Angeles*, 772 F.3d 608, 620 (9th Cir. 2014) ("[a] wrongful detention can ripen into a due process violation if 'it was or should have been known [by the defendant] that the [plaintiff] was entitled to release'") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001)).

The Court granted summary judgment on the claims against the State and the Sheriffs after determining that Plaintiff's detention after his November 3, 2022, sentencing

---

[1] In his First Amended Complaint, Plaintiff also named numerous Doe Defendants. (Doc. 26.) The Court dismissed the Doe Defendants because Plaintiff failed to timely move to substitute the named individuals in place of the Doe Defendants. (Doc. 94 at 17–18.) In his Response to the Order to Show Cause, Plaintiff requests that the Court amend its Order to reinstate the Doe Defendants. (Doc. 95 at 2.) Plaintiff states that the Doe Defendants refer to certain FBI personnel whose names were unknown at the time. (*Id.*) To the extent Plaintiff seeks reconsideration of a portion of the Court's Summary Judgment, his request is untimely. *See* LRCiv 7.2(g)(2) (any motion for reconsideration must be filed within 14 days of the Order that is the subject of the motion). Plaintiff also fails to present any valid grounds for reconsideration. *See* LRCiv 7.2(g)(1); *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582–83, 586 (D. Ariz. 2003). Thus, Plaintiff's request to amend its Order to reinstate the Doe Defendants is denied.

was a lawful detention because outstanding bonds existed for 2018 and 2019 criminal matters that justified detention. (Doc. 94 at 7–13, 20.)

The County did not move for summary judgment as to the claims against it ostensibly because Plaintiff failed to properly serve the County. (*See* Doc. 70 at 2 n.1.) But the Court determined that, because the County consented to removal of this action from state court to federal court under 28 U.S.C. § 1441(a), the County waived service. (Doc. 94 at 20.)

**II.    Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(f)(1)**

Rule 56(f)(1) provides that a court may "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," so long as the Court first "giv[es] notice and a reasonable time to respond." *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (reversing summary judgment as to some claims because the pro se plaintiff "did not have notice and an opportunity to oppose summary judgment on those claims").

Here, the Court identified the material facts that may not be genuinely in dispute and provided Plaintiff an opportunity to respond and show cause why, considering these material facts, the claims against the County should not be dismissed.

**III.    Relevant Facts**

The facts in this case were set out in the Court's Summary Judgment Order. The Court repeats some of them here because Plaintiff's claims are fact specific.

In 2018, Plaintiff was charged with aggravated assault, domestic violence, and disorderly conduct. (Doc. 66 ¶ 1; Doc. 82 ¶ 1; Doc. 66-3 at 15, Pl. Dep. 13:12–23, Sept. 16, 2024.) On February 19, 2020, Plaintiff posted the $50,000 bond in this case. (Doc. 66 ¶ 1; Doc. 82 ¶ 1; Doc. 66-3 at 16, Pl. Dep. 14:18–22.)

In 2019, Plaintiff was charged with aggravated assault and disorderly conduct. (Doc. 66 ¶ 6; Doc. 82 ¶ 6; Doc. 66-3 at 24, Pl. Dep. 22:24–23:3.) On November 26, 2019, Plaintiff paid the $25,000 bond in this case. (*Id.*; Doc. 66-3, Pl. Dep. 22:3–23, 23:4–6.)

On January 9, 2020, the Scottsdale Police Department arrested Plaintiff for money laundering and conspiracy and took him into custody.  (Doc. 68 ¶ 7; Doc. 68-2 at 3, Ryan Decl. ¶ 10; Doc. 68-2 at 50–55.)  Because Plaintiff was on release for the 2019 criminal matter at the time of this 2020 offense, the State requested that he be held on "non-bondable status."  (Doc. 68-2 at 158 (March 3, 2021, Minute Entry); Doc. 68-2 at 66.)

On January 10, 2020, the bond for the 2019 criminal case was exonerated.  (Doc. 66 ¶ 7; Doc. 82 ¶ 7.)[2]

On February 21, 2020, the bond for the 2018 criminal case was exonerated.  (Doc. 66 ¶ 2; Doc. 82 ¶ 2.)

Plaintiff was charged in the 2020 criminal case with three counts: possession of narcotic drugs for sale; money laundering; and possession of drug paraphernalia.  (Doc. 68-2 at 138, Hr'g Tr. 60:6–13, March 3, 2021.)  On March 3, 2021, an evidentiary hearing was held on Plaintiff's "non-bondable status," and the Court ordered that Plaintiff continue to be held without bond.  (Doc. 68 ¶¶ 15, 20; Doc. 89 ¶¶ 15, 20.)

In August 2022, a trial was held in Plaintiff's 2020 criminal case; Plaintiff was acquitted on two of the charges, but he was convicted of possession of drug paraphernalia.  (Doc. 68-2 at 152 (Pl.'s Resp. to Admis. No. 4).)  On November 3, 2022, he was sentenced to 2 years, 4 months' imprisonment.  (Doc. 66 ¶ 11; Doc. 66-4 at 2–3.)

At the November 3, 2022, sentencing hearing, the court stated:

> He's already served two years and nine months already [sic], so he would go over to DOC,[3] get his number, and either pay the bond on the other two cases that he's got, or come back and sit here pending his other two trials.
>
> . . .
>
> I don't know how this is going to work with you going over to DOC because

---

[2] See Ariz. R. Crim. P. 7.6(d)(1) ("[i]f the court finds before a violation that there is no further need for an appearance bond, it must exonerate the bond and order the return of any security").

[3] "DOC" refers to the Arizona Department of Corrections, Rehabilitation, and Reentry, which is referred to as DOC, ADOC, and ADCRR interchangeably.

of your other case that's pending . . . I just don't know.  It's entirely possible that they'll take you, and then Mr. George [Prosecutor] may have to do something or the Court might have to issue a transfer—not you; Ms. Grisman [Prosecutor] will have to issue some sort of transport.  I just don't know.  I wish I did, but I don't.

(Doc. 66 ¶¶ 12–13; Doc. 82 ¶¶ 12–13; Doc. 66-4 at 12, Hr'g Tr. 8:25–9:3, 15:13–20.)

After the November 3, 2022, hearing, Plaintiff was returned to the jail, but he was never transported to DOC; rather, he remained held at the jail.  (Doc. 68-2 at 70, Pl. Dep. 71:11–14, 86:11–22.)

On January 11, 2023, a status conference was held in the 2020 criminal case.  (Doc. 66-4 at 24.)  At this hearing, the court addressed trial scheduling for Plaintiff's two other cases, which were still pending.  (*Id.* at 27, Hr'g Tr., 4:18–8:19.)  Regarding the 2020 case, Plaintiff testified that he had served eight months over his sentence.  (*Id.* 32:1–11.)  The court reviewed the November 3, 2022, sentencing Minute Order, which stated that Plaintiff was ordered to be transported to the DOC to be processed so that he could be immediately released from custody.  (*Id.* 10:1–5.)  The court expressed that it could not understand how DOC had not yet processed Plaintiff.  (*Id.* 10:23–24.)

On January 12, 2023, the Maricopa County Jail sent an email to the ADCRR Time Computation Unit asking the Unit to investigate Plaintiff's sentence.  (Doc. 66-2 at 2.)

On January 13, 2023, Plaintiff filed a Motion to Modify Conditions of Release in the 2019 criminal case; the Motion requested that the bond in the case be reduced.  (Doc. 66-3 at 108.)  In this filing, Plaintiff's counsel stated that there was a bond set at $25,000, and that Plaintiff had previously paid the bond in this matter; however, for unknown reasons that bond was returned, and Plaintiff was not in the same position financially as he was in when he posted the bond.  (*Id.* at 108–109.)

On January 13, 2023, the ADCRR Time Computation Unit issued a directive to the County regarding Plaintiff, which stated "[t]his is your authorization to release the Arizona Department of Corrections, Rehabilitation and Reentry hold on the above-named subject.  This release is effective: 1/13/2023 on the following case: CR2020 101481001."  (Doc. 66-2 at 5.)

On January 31, 2023, Plaintiff's counsel sent an email to Judge Suzanne Cohen inquiring about a hearing date to address the Motion to Modify Conditions of Release and notifying the Judge that Plaintiff was still in custody of the County Sheriff. (Doc. 66-3 at 112–113.) The Judge responded, "[d]idn't you get my email from last week? DOC lifted his hold so if he pays his bond he'll get out." (*Id.* at 112.) The Judge also stated she would not reduce the bond. (*Id.* at 111.)

On February 3, 2023, Plaintiff posted the $25,000 bond and the $50,000 bond in his 2018 and 2019 criminal cases. (Doc. 66-3 at 114–119.)

On February 6, 2023, Plaintiff was released from the County jail. (Doc. 66 ¶ 21: Doc. 82 ¶ 21.)

Approximately four months later, Plaintiff's 2018 and 2019 criminal cases were dismissed. (Doc. 68-3 at 74, Pl. Dep. 87:17–24.)

**IV.    Summary Judgment Order**

In its Summary Judgment Order, the Court noted that, with respect to a claim of false imprisonment, the essential element is unlawful detention. (Doc. 94 at 7, 10.) "A detention that occurs pursuant to legal authority . . . is not an unlawful detention. If the . . . imprisonment has occurred pursuant to valid legal process, the fact that the action was procured maliciously and without probable cause does not constitute false arrest or false imprisonment." (*Id.* at 7, quoting *Mundt v. United States*, 611 F.2d 1257, 1259 (9th Cir. 1980)).

As set forth above, after the November 3, 2022, sentencing hearing, the ADCRR did not lift its "hold" on Plaintiff until January 13, 2023. In its Summary Judgment Order, the Court found that detention pursuant to the ADC hold was improper, as it should have been lifted immediately with respect to Plaintiff's 2020 case. (*Id.* at 9.) But the Court went on to state that, even if the ADC hold had been lifted immediately after the November 3, 2022, sentencing, "Plaintiff would not have been released from the County Jail because his bonds for the 2018 and 2019 criminal matters were still outstanding and had to be paid before he could be released." (*Id.*) The Court noted that, at the November 3, 2022, hearing,

- 6 -

the judge expressly told Plaintiff and his attorney that Plaintiff had to pay the bond on his other two cases. (*Id.* at 11, citing Doc. 66-4 at 12, Hr'g Tr. 8:25–9:3, 15:13–20.) Thus, Plaintiff's detention after the November 3, 2022, hearing was not unlawful because it was pursuant to the outstanding bonds in the 2018 and 2019 cases.

In the summary judgment briefing, Plaintiff argued that his detention after the November 3, 2022, hearing was unlawful because the bonds for the 2018 and 2019 criminal matters "were exhausted when the bonds issued . . . and then returned" to the bondsman. (Doc. 83 at 6.) Plaintiff claimed that the two bonds were no longer outstanding and no longer applied, so he was entitled to a new bond hearing on those two cases after the November 3, 2022, hearing. (*Id.* at 5–6.) The Court rejected that argument, finding that Plaintiff had already received bond hearings in the 2018 and 2019 cases, and the orders setting the bonds in those cases were not vacated. (Doc. 94 at 12.) Plaintiff failed to present any grounds that he was entitled to second bond hearings in the 2018 and 2019 cases. (*Id.*) *See Frantz C. v. Shanahan*, No. 18-CV-2043 (JLL), 2018 WL 3302998, at *2–3 (D.N.J. July 5, 2018) (explaining detainee was not entitled to a second bond hearing "absent some showing that his original bond hearing was not bona fide," and finding that original bond hearing, at which the government bore the burden of proof, was bona fide).

The Court concluded that, because the evidence showed Plaintiff was not unlawfully detained following the November 3, 2022, sentencing hearing, Plaintiff could not establish genuine issues of material fact regarding his false imprisonment and due process claims against the State and the Sheriffs. (Doc. 94 at 9, 13.) The Court then issued the Order to Show Cause why the claims against the County should not be dismissed in light of the fact that Plaintiff's post-November 3, 2022, detention was lawful. (*Id.* at 20.)

**V.    Response to Order to Show Cause**

Plaintiff argues that, following the November 3, 2022, sentencing hearing, the County (and the Sheriffs) had a statutory duty to present him for a hearing to enable him to post bond in the 2018 and 2019 cases. (Doc. 95 at 4, citing Ariz. Rev. Stat. § 13-3967.) Plaintiff submits that County and State officials should have allowed him a bond hearing

within 24 hours after his November 3, 2022, hearing. (*Id.* at 4–5.) According to Plaintiff, during his post-November 3, 2022, detention, he was never told of the need to post bond, and the bond orders in the 2018 and 2019 cases were "exhausted," returned to the bondsman, and never renewed. (*Id.* at 5.) Plaintiff maintains that a jury could find the County is liable for false imprisonment and due process violations because the County and the Sheriff purposely ignored Plaintiff's express request to be taken to be bonded. (*Id.* at 7–8.)

Plaintiff misinterprets the meaning of a bond being "exonerated." He asserts that when the bonds in the 2018 and 2019 cases were exonerated after he was placed in custody for the 2020 charges, it meant that "there was simply no bond order any longer" in those cases, "and likewise, there was no order denying bond [in those cases], or any order denying release in [those cases]." (*Id.* at 6.)

"Exoneration" means that the bondsman who put up the bond receives the funds back and is released of its obligation. As the Court explained in the Summary Judgment Order:

> When Plaintiff went into pretrial custody on the 2020 case, he was not relieved from having to pay the bonds ordered in his prior cases; rather, the sureties (bail bondsmen) in the 2018 and 2019 cases were exonerated, i.e., released from their obligation, because there was no further need for a bond with Plaintiff in custody. *See* Ariz. R. Crim. P. 7.6(d)(1) ("If the court finds before a violation that there is no further need for an appearance bond, it must exonerate the bond and order the return of any security."); *United States v. Torres*, 807 F.3d 257, 261 (7th Cir. 2015) ("A court is not required to exonerate the surety until 'a bond condition has been satisfied' or until a surety 'timely surrenders the defendant into custody.'") (quoting Fed. R. Crim. P. 46(g)).

(Doc. 94 at 12.) Contrary to Plaintiff's interpretation, exoneration does not mean that the *orders* issued in the 2018 or 2019 cases were "exonerated" or vacated. Those bond orders remained valid and were in effect when Plaintiff completed his sentence in the 2020 case.

In attempting to show cause why the claims against the County should not be dismissed, Plaintiff repeats the same arguments he made in response to the State and the

Sheriff's Motions for Summary Judgment; namely, that the bond orders were no longer in effect, he was entitled to a new bond hearing, and he was unaware of the need to post bond in the 2018 and 2019 cases. The Court has already addressed and rejected these arguments. Plaintiff therefore fails to show cause why the remaining claims against the County should not be dismissed. Summary judgment will be granted on the claims against the County.

**IT IS ORDERED:**

(1)     Pursuant to Federal Rule of Civil Procedure 56(f)(1), summary judgment is granted in favor of the County on the remaining claims in this action.

(2)     The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 30th day of March, 2026.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge